IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 18, 2025 Session

**STATE OF TENNESSEE v. CHRIS GREEN**

**Appeal from the Criminal Court for Hawkins County**
**No. 22CR145        John F. Dugger, Jr., Judge**
_____

**No. E2025-00289-CCA-R3-CD**
_____

The Defendant, Chris Green, was convicted by a Hawkins County Criminal Court jury of robbery and facilitation to commit aggravated assault, for which he received an effective sentence of twenty-five years' incarceration as a Range III, persistent offender. The trial court also ordered the Defendant to pay $7,500 in fines as part of his sentence. On appeal, the Defendant argues the trial court erred by classifying him as a Range III, persistent offender because the State failed to prove he had received five qualifying prior felony convictions and because the trial court conducted an unconstitutional factual inquiry into the nature of the underlying offenses. The Defendant also argues the trial court failed to make sufficient findings to support its imposition of fines. Following our review, we reverse the Defendant's sentences and remand for resentencing consistent with this opinion. Because we conclude that the State failed to meet its burden of proof regarding the Defendant's sentencing range, we do not address the Defendant's constitutional claim.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Reversed; Case Remanded**

STEVEN W. SWORD, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

William W. Gill, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Todd Estep, District Public Defender; and Roland Cowden, Assistant District Public Defender (at trial), for the appellant, Chris Green.

Jonathan Skrmetti, Attorney General and Reporter; Courtney N. Orr, Deputy Attorney General; Dan E. Armstrong, District Attorney General; and Paul J. Hornick, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  FACTUAL AND PROCEDURAL HISTORY

On October 3, 2022, a Hawkins County grand jury returned a two-count indictment charging the Defendant with one count of conspiracy to commit especially aggravated robbery and one count of especially aggravated robbery. On September 15, 2023, the State filed a notice of its intent to seek enhanced sentencing, arguing that the Defendant qualified as a Range III, persistent offender, citing a series of convictions in North Carolina between 1978 and 1985 and two convictions in South Carolina in 1988 and 2002. On August 12, 2024, a Hawkins County grand jury returned a two-count superseding indictment charging the Defendant with one count of robbery and one count of aggravated assault.

### A.  TRIAL

The Defendant proceeded to trial on October 22, 2024. The evidence adduced at trial established that the Defendant, along with his nephew, Thaddeus Johnson, called the eighty-two-year-old victim to ask about purchasing a vehicle the victim was selling. The vehicle was parked on the victim's property near the road. The victim met the Defendant and Mr. Johnson, permitted them to inspect the vehicle, and rode with them as they took the vehicle for a test drive "around the block." The Defendant drove the vehicle, the victim sat in the front seat, and Mr. Johnson sat in the back seat. At some point during the test drive, Mr. Johnson wrapped a belt-like "strap" around the victim's throat, choking him. The victim heard Mr. Johnson tell the Defendant to "get in his front pocket," and the victim believed he saw the Defendant reach inside his front pocket before he lost consciousness.

Shortly after the victim regained consciousness, the Defendant drove the vehicle back to the victim's property and instructed the victim not to leave the vehicle. The victim watched the Defendant and Mr. Johnson exit the vehicle, enter their own vehicle, and drive away. Thereafter, the victim exited the vehicle and discovered that his cell phone and the cash he carried in his wallet in his front pocket, totaling between $2,200 and $2,300, were missing.

Upon this proof, the jury convicted the Defendant of robbery, a Class C felony, and affixed a fine of $5,000. Tenn. Code Ann. § 39-13-401(b). The jury also convicted the Defendant of facilitation to commit aggravated assault, a Class D felony, as a lesser-included offense of aggravated assault and affixed a fine of $2,500. Tenn. Code Ann. §§ 39-11-403(b), -13-102(a)(1)(A)(iv), (d)(1)(A)(i)(*a*). The trial court approved the jury's verdict and scheduled a sentencing hearing for December 12, 2024.

- 2 -

B.  SENTENCING HEARING

On November 21, 2024, the State filed a motion seeking consecutive sentencing and arguing that the Defendant qualified as a Range III, persistent offender under Tennessee Code Annotated section 40-35-107.  In support of this latter argument, the State alleged that the Defendant had previously been convicted of the following offenses:

| Offense | Offense Date | Conviction Date | Jurisdiction | Case Number[1] |
|---------|-------------|-----------------|--------------|-------------|
| First degree arson | December 6, 1984 | June 3, 1985 | Columbus County, North Carolina | 1985CRS001476 |
| Armed robbery | December 2, 1988 | February 16, 1989 | Horry County, South Carolina | 89-GS-26-423 |
| Armed robbery | November 19, 2002 | April 14, 2004 | Horry County, South Carolina | 03-GS-26-0023 |
| Common law robbery | December 16, 1981 | March 1, 1982 | Columbus County, North Carolina | 81CRS11455 |
| Larceny | May 6, 1983 | May 17, 1983 | Columbus County, North Carolina | 83CR003892 |

The State further alleged that under Tennessee law at the time the offenses were committed, the Defendant's conviction of first degree arson qualified as a Class A felony; his convictions of armed robbery qualified as Class B felonies; his conviction of common law robbery qualified as a Class C felony; and his conviction of larceny qualified as a Class D felony.

The State attached certified packets of information from both the South Carolina Department of Corrections ("SCDOC") and the North Carolina Department of Public Safety ("NCDPS")[2] as exhibits to its motion.  As relevant to this appeal, the South Carolina

---

[1] This table lists the case numbers for the offenses the State alleged the Defendant had committed in the manner the State listed them.  The record indicates several slight inconsistencies in these case numbers, either due to the parties' abbreviating the case numbers or to scrivener's error.  To avoid misconstruing the parties' and the trial court's respective intents, we will hereafter use quotation marks to identify their references to the relevant case numbers.

[2] The pertinent documents contained within the North Carolina packet were compiled and file-stamped by the NCDPS's Combined Records Section, but they pertain to the Defendant's incarceration in the North Carolina Department of Correction ("NCDOC").  For clarity, we note that in 2012, the North

packet included photographs of the Defendant's face with his SCDOC inmate number; the judgment of conviction for the Defendant's guilty-pled conviction of armed robbery in case number "03-GS-26-0023"; and a verdict form noting the Defendant's February 16, 1989 conviction of armed robbery following a jury trial in case number "89-GS-26-243." The North Carolina packet included a copy of the Defendant's fingerprints taken on March 4, 1982, upon his admission to the NCDOC following his March 1, 1982 conviction of common law robbery in case number "81CRS11455"; another copy of the Defendant's fingerprints taken on June 6, 1985 upon his admission to the NCDOC following his June 3, 1983 convictions of "Safecracking; B&E; Larceny; [and] Arson" in case numbers "85CRS1474, 1475, 76"; another copy of the Defendant's fingerprints taken on June 30, 1978 upon his admission to the NCDOC following his June 27, 1978 convictions of "Misd[.] Break[]&[]Entering" and two convictions of "Misd[.] Larceny" in case numbers "78CR5685" and "78CR5954"; and an NCDOC "inmate summary record" listing the Defendant's convictions of first degree arson in case number "85001474" and common law robbery in case number "81011455."

The Defendant filed a response to the State's motion on December 12, 2024, in which he requested concurrent sentencing "within the minimum of the ranges" and argued that only one enhancement factor and several mitigating factors applied. He did not object to the State's argument that he should be classified as a Range III, persistent offender. The trial court held a sentencing hearing that same day.

At the outset of the sentencing hearing, the trial court noted that "the presentence report has been done" and that an amended presentence report had also been prepared to correct a "typographical error."[3] The trial court approved the fines assessed by the jury and made the following findings.

> [F]or this case, we tried this case and the jury came back with guilty on the principal charge of robbery and they imposed a $5,000 fine. That will be the fine in the case on Count One. In Count Two[,] he was charged with an aggravated assault[,] but the jury came back with a lesser[-]included offense of facilitation of aggravated assault, a Class D felony[,] and they imposed a fine of $2,500[,] so that will be the fine. He has $7,500 in fines. And the State – I'm going to let the State go from there.

---

Carolina General Assembly consolidated the NCDOC along with several other state departments to establish the NCDPS. *See* N.C. Gen. Stat. § 143B-600(a)(1) (2012).

[3] Because this "typographical error" is not germane to our resolution of the appeal, we refer to the amended presentence report simply as the "presentence report" throughout this opinion.

The State then argued that the trial court should impose maximum within-range sentences and align the sentences consecutively, yielding an effective sentence of twenty-seven years' incarceration.

The State argued that the Defendant qualified as a Range III, persistent offender pursuant to Tennessee Code Annotated section 40-35-107. Relying upon the presentence report, the State contended that the Defendant was convicted of common law robbery in 1981; larceny in 1983; "arson, burglary, safecracking[,] and larceny" in 1984; armed robbery in 1988; and armed robbery in 2002. The Defendant did not object to this argument. Both the Defendant and the State devoted the remainder of their arguments to the applicable enhancement and mitigating factors and to the appropriateness of consecutive sentencing.

Following arguments, the trial court made the following findings:

First, the [c]ourt finds that you are a persistent offender. I've studied this and found typos in the report, just little dates and things . . . which have now been corrected. But for your prior convictions, the first one that I'm going to – I have to find five separate convictions that occurred on different – at different times.

On offense date November the 19th, 2002, there was an armed robbery in South Carolina, Horry County. In Tennessee[,] that's equivalent to an aggravated robbery, Class B felony. You were sentenced to 18 years and there's a violation of probation pending on that case. . . . [S]o that's one conviction right there. I have got to have five separate ones.

The next one the [c]ourt has considered was on – the offense date was December the 2nd, armed robbery in South Carolina, Horry County. It's equivalent to the robbery statute in Tennessee of 1988, Class B felony[,] and you were sentenced to 25 years on that. The first one, the armed robbery in 2002, you've got 18 years. The one in 1988[,] you were sentenced to 25 years[,] and that was case number 89-GS0-26-423.

And then there's a series of convictions of different – they're all on the same date, series of offenses. These occurred on the offense date of December 6th of 1984. There were, looks like, three separate convictions. First degree arson in North Carolina, Columbus County. Equivalent to an aggravated arson in Tennessee, a Class A felony. And that was case number 85CR51476. And then the second one on that December 6, 1984, date was breaking and entering in North Carolina, Columbus County. That's

equivalent to a third degree burglary in Tennessee in 1984. And that would be equivalent to a Class D felony. And then another case is a safecracking in North Carolina on December the 6th, 1984, and that's equivalent to Tennessee safecracking in 1984. This was Columbus County. A Class D felony in 85CRS – or CR51474.

And the next one the [c]ourt considers is on May the 6th, 1983, a larceny in North Carolina, a D felony, Columbus County, equivalent to grand larceny in case number 83CR3892.

And then lastly, the fifth conviction the [c]ourt considers was on December the 16th, 1981, common law robbery in North Carolina, Columbus County. That's equivalent to robbery in Tennessee, a Class C felony. And that's 81CRS511455. And so[,] that's five convictions.

The [c]ourt finds that you are a persistent offender by having five or more prior felonies within the next two lower felony classes[.]

The trial court further found that multiple enhancement factors applied and that no mitigating factors applied. It imposed within-range sentences of fifteen and ten years' incarceration for the Defendant's convictions of robbery and facilitation to commit aggravated assault, respectively. The trial court aligned the Defendant's sentences consecutively, yielding an effective sentence of twenty-five years' incarceration.

The Defendant filed a timely, but unsuccessful, motion for a new trial. This timely appeal followed.

## II.    ANALYSIS

On appeal, the Defendant argues that the trial court erred by classifying him as a Range III, persistent offender because the State failed to prove he had received five qualifying prior felony convictions and because the trial court conducted an unconstitutional factual inquiry into the nature of the underlying offenses. The Defendant also argues that the trial court failed to make sufficient findings to support its imposition of fines. We address these issues in turn.

### A.  RANGE CLASSIFICATION

The Defendant first contends that the trial court erred in classifying him as a Range III, persistent offender. Specifically, he argues that the State failed to adduce sufficient proof to establish beyond a reasonable doubt his 1983 conviction for larceny and that,

accordingly, the trial court erred by considering it a qualifying prior felony conviction under Tennessee Code Annotated section 40-35-107. He also asserts that the trial court conducted an unconstitutional factual inquiry into the nature of the underlying offenses by examining one of his December 6, 1984 convictions as a qualifying prior felony. On the former argument, the State concedes error.

As the parties note in their respective briefs, the Defendant did not present either claim to the trial court. In his December 12, 2024 response to the State's request for enhanced punishment and consecutive sentencing, he did not oppose the State's argument that he qualified as a Range III, persistent offender; rather, he requested that the trial court impose sentences "within the minimum of the ranges" in consideration of several mitigating factors and align the sentences concurrently. Indeed, our review of the transcript of the sentencing hearing reveals that the parties devoted the majority of their arguments to the applicable enhancement and mitigating factors and the appropriate alignment of the Defendant's sentences. The State's argument regarding the appropriate sentencing range and the trial court's analysis thereof were comparatively brief, and at no point did the Defendant object to either. The Defendant also did not raise this issue in his motion for a new trial. Therefore, this claim is waived and is reviewable only for plain error. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

A defendant may only receive relief under plain error review if he or she proves all five of the following prerequisites:

> (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been violated; (4) the accused must not have waived the issue for tactical reasons; and (5) consideration of the issue is necessary to achieve substantial justice.

*State v. Rimmer*, 623 S.W.3d 235, 255-56 (Tenn. 2021) (citing *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016)). If a defendant fails to prove any one of the five plain error factors, then he or she is not entitled to plain error relief, and the appellate court is not required to analyze the remaining factors. *State v. Bledsoe*, 226 S.W.3d 349, 358 (Tenn. 2007). In order to qualify as plain error, "[t]he magnitude of the error must have been so significant that it probably changed the outcome of the trial." *Id*. at 354 (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994) (internal quotation marks omitted)); *see also* Tenn. R. App. P. 36(b).

Where the record supports the trial court's sentencing determination and that determination reflects that the trial court properly applied the purposes and principles of sentencing, we view the trial court's decision as presumptively reasonable and review it for an abuse of discretion. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Under that standard of review, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10. A trial court abuses its discretion when it "(1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous assessment of the evidence." *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Our statutes provide for sentencing by range, and a defendant's appropriate sentencing range is determined by his or her offender classification and by the classification of the offense for which he or she is convicted. Tenn. Code Ann. § 40-35-112; *State v. Menke*, 590 S.W.3d 455, 464 (Tenn. 2019). Offender classification determinations are made, in large part, by reference to a defendant's prior felony convictions, if any exist. *See* Tenn. Code Ann. §§ 40-35-105(a), -106, -107, -108, -109, -120. As relevant to this appeal, a defendant qualifies as a Range III, persistent offender if he or she has received "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes[.]" Tenn. Code Ann. § 40-35-107(a)(1). A persistent offender is sentenced as a Range III offender. Tenn. Code Ann. §§ 40-35-107(c), -112. The State bears the burden of proving the fact of a defendant's qualifying prior felony convictions beyond a reasonable doubt. *State v. Vick*, 242 S.W.3d 792, 796 (Tenn. Crim. App. 2007). In this case, the Defendant was convicted of robbery, a Class C felony, and facilitation to commit aggravated assault, a Class D felony. Because there is only one felony class lower than a Class D felony, *see* Tenn. Code Ann. § 40-35-110(a), the State bore the burden of proving that the Defendant had received five or more prior felony convictions, regardless of their classification.

The requirements for plain error review are met in this case. The record clearly establishes what occurred in the trial court, and the State does not assert that the Defendant waived this issue for tactical purposes. *Rimmer*, 623 S.W.3d at 255-56; *State v. Smith*, 492 S.W.3d 224, 239 (Tenn. 2016) (holding that "an absence of indicia in the trial record that a defendant has waived an issue for tactical reasons is sufficient to satisfy [that] criterion of plain error."). Moreover, a criminal defendant "has a right to be sentenced within the law applicable to him, his circumstances, and his record." *State v. Gordon*, No. W2021-01190-CCA-R3-CD, 2023 WL 2375707 at *6 (Tenn. Crim. App. Mar. 7, 2023), *no perm. app. filed*. In its September 15, 2023 notice of intent to seek enhanced punishment, the State argued that the Defendant "should be sentenced as a persistent/career offender" based upon his prior felony convictions. Among these prior felony convictions, the State alleged

that the Defendant committed larceny on May 6, 1983, for which he was convicted on May 17, 1983, in North Carolina case number "1983CR003892." The State reiterated this request following the Defendant's trial in its November 21, 2024 request for enhanced punishment, in which the State argued that the larceny conviction[4] qualified as a Class D felony under equivalent Tennessee law. At the Defendant's sentencing hearing, the State again argued that the Defendant was convicted of larceny in 1983, and following arguments, the trial court found that the Defendant committed larceny in North Carolina in "case number 83CR3892" and that the conviction was "equivalent to grand larceny."

The trial court's conclusion that the Defendant was convicted of larceny in 1983 is not supported by the record. The North Carolina packet, attached as an exhibit to the State's November 21, 2024 request for enhanced punishment, identifies numerous convictions, but it does not identify, let alone reference, any conviction of larceny in 1983.[5] Further, although the trial court noted that it had considered the Defendant's presentence report, the only reference contained therein was in the context of a recitation of the State's September 15, 2023 notice of intent to seek enhanced punishment, in which the State identified the conviction as a prior conviction it intended to rely upon to argue that the Defendant "should be sentenced as a persistent/career offender." In its recitation of the Defendant's prior criminal record, however, the presentence report listed a May 17, 1983 North Carolina conviction of "break and enter" in docket number "1983CR003892." The presentence report further identified the offense date as May 6, 1983.

In sum, the State alleged that the Defendant should be sentenced as a Range III, persistent offender because he had received five qualifying prior felony convictions; namely, two convictions of armed robbery, first degree arson, common law robbery, and larceny. In doing so, the State had the burden of proving beyond a reasonable doubt the fact of each of those prior felony convictions, including the alleged larceny conviction. *Vick*, 242 S.W.3d at 796. Because there was no evidence of any larceny conviction as identified by the State in the record, the State failed to carry that burden of proof. Accordingly, the trial court's conclusion that the Defendant qualified as a Range III, persistent offender is unsupported by the record and amounts to a clearly erroneous assessment of the evidence. *See Mangrum*, 403 S.W.3d at 166. This conclusion resulted in the Defendant receiving a Range III sentence, although the evidence presented at the

---

[4] The State listed the larceny conviction's case number alternatively as "1983CR003892," "83CR003892," and "83CR3892."

[5] While the North Carolina packet references two misdemeanor larceny convictions in case numbers "78CR5685" and "78CR5954," it also indicates that the Defendant was convicted for those offenses on June 27, 1978. Moreover, as misdemeanor offenses, these convictions would have been irrelevant to the Defendant's classification as a Range III, persistent offender. Tenn. Code Ann. § 40-35-107.

sentencing hearing and in the State's filings supported only a Range II sentence.[6] *See* Tenn. Code Ann. § 40-35-106(a) (providing that a "multiple offender is a defendant who has received . . . [a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes"); Tenn. Code Ann. § 40-35-106(c) (providing that "[a] defendant who is found by the court beyond a reasonable doubt to be a multiple offender shall receive a sentence within Range II."). The error, therefore, resulted in a breach of a clear and unequivocal rule of law, adversely affecting the Defendant's substantial right to receive a sentence within the appropriate range based upon the evidence, and we conclude that consideration of this error is necessary to achieve substantial justice.

Following our plain error review of this issue, we conclude that the trial court based its conclusion that the Defendant was a Range III, persistent offender on a clearly erroneous assessment of the evidence. Accordingly, the Defendant's Range III sentence requires reversal.

Included in his argument that his sentence requires reversal, the Defendant also contends that the trial court erred in its foreign-conviction analysis of his 1983 conviction. However, because we conclude that the State failed to meet its burden of proving the conviction, we do not address this aspect of the argument. Relatedly, the Defendant contends that he is also entitled to a reversal of his Range III sentence because the trial court conducted an unconstitutional factual inquiry into the nature of the underlying offenses by treating one of his December 6, 1984 convictions as a qualifying prior felony. The Defendant relies upon the United States Supreme Court's recent decision in *Erlinger v. United States*, 602 U.S. 821 (2024). Having already concluded that the Defendant's Range III sentence must be reversed because there was insufficient proof of his having received five qualifying prior felony convictions, we decline to address the Defendant's constitutional claim. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) ("If issues in a case can be resolved on non-constitutional grounds, courts should avoid deciding constitutional issues.").

Moreover, both in their briefs and oral arguments, the parties agreed that the Defendant should appropriately be sentenced as a Range II, multiple offender, and our review of the record supports this conclusion. These convictions are identified in the relevant packets and the presentence report, and it is well established that a trial court may rely on a presentence report as reliable hearsay in determining range classification. *State v. Sexton*, No. M2018-00874-CCA-R3-CD, 2019 WL 5700889, at *5 (Tenn. Crim. App. Nov. 5, 2019), *perm. app. denied* (Tenn. Mar. 26, 2020). Because the record demonstrates

---

[6] As explained below, the parties agree that the Defendant would be properly classified as a Range II, multiple offender, and our review of the record supports that conclusion.

that the Defendant would be properly classified, based upon these prior felony convictions, as a Range II, multiple offender, consideration of the Defendant's claim regarding his December 6, 1984 convictions would be irrelevant to determining his appropriate range. The Defendant's sentence is reversed, and the case is remanded for resentencing as a Range II, multiple offender.

## B. IMPOSITION OF FINES

The Defendant also argues that his sentence must also be reversed because the trial court failed to make sufficient findings to support its imposition of $7,500 in fines. Although the State again concedes error, it argues that the record supports the trial court's imposition of fines and, therefore, that this aspect of the Defendant's sentence should be affirmed following a *de novo* review.

The Tennessee Constitution provides that all fines in excess of fifty dollars must be affixed by a jury as the trier of fact. Tenn. Const. art. VI, § 14. During a defendant's sentencing hearing, the trial court "shall impose a fine, if any, not to exceed the fine fixed by the jury." Tenn. Code Ann. § 40-35-301(b). In imposing a fine, the trial court must consider the purposes and principles of sentencing, as well as a defendant's "prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors that are relevant to an appropriate, overall sentence." *State v. Taylor*, 70 S.W.3d 717, 723 (Tenn. 2002) (citing *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997)). The trial court must also consider the seriousness of the offense and a defendant's ability to pay the fine. *See Taylor*, 70 S.W.3d at 723. However, a defendant's ability to pay is not a controlling factor, and "a significant fine is not automatically precluded just because it works a substantial hardship on a defendant—it may be punitive in the same fashion incarceration may be punitive." *State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Carter*, 988 S.W.2d 145 (Tenn. 1999). As with other aspects of the trial court's sentencing determinations, we review the imposition of fines for an abuse of discretion. *Bise*, 380 S.W.3d at 707.

As the Defendant notes in his brief, he did not object to the trial court's imposition of fines, so our review of this issue is limited to plain error. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). However, the requirements for plain error review are met in this case. The record clearly establishes what occurred in the trial court, and the State does not argue that the Defendant waived this issue for tactical purposes. *Rimmer*, 623 S.W.3d at 255-56; *Smith*, 492 S.W.3d at 239. The trial court made no findings in support of its imposition of the Defendant's fines in this case; instead, it noted the jury's fines for both of the Defendant's convictions and stated that the Defendant would owe

$7,500 in fines.  It is well-established that a trial court must consider whether the jury-assessed fine is justified and may not merely approve the fines without further factual inquiry.  *State v. House*, No. M2008-00032-CCA-R3-CD, 2008 WL 5130451, at *7 (Tenn. Crim. App. Dec. 8, 2008) (citing *Blevins*, 968 S.W.2d at 895), *perm. app. denied* (Tenn. Apr. 27, 2009).  Therefore, the trial court's imposition of fines in this case breached a clear and unequivocal rule of law and deprived the Defendant of his right to have the fines affixed by the jury assessed before their imposition, and we conclude that consideration of this issue is necessary to achieve substantial justice.  *Rimmer*, 623 S.W.3d at 255-56.

As the State notes in its brief, this court may conduct a *de novo* review of the trial court's imposition of fines.  However, we are mindful that "the factors to be considered and weighed in imposing a fine require a fact-intensive inquiry" to which the trial court is better suited.  *State v. Climer*, No. W2024-00023-CCA-R3-CD, 2024 WL 4948973, at *6 (Tenn. Crim. App. Dec. 3, 2024), *no perm. app. filed*.  Additionally, "[w]hen the trial court fails to place on the record *any* reasoning to support its sentencing decision, the most appropriate remedy is to remand the case to the trial court for reconsideration."  *State v. Oliver*, No. E2023-01623-CCA-R3-CD, 2025 WL 1014382, at *15 (Tenn. Crim. App. Apr. 4, 2025) (emphasis in original) (citing *Bise*, 380 S.W.3d at 705, n.41), *perm. app. denied* (Tenn. Sept. 10, 2025).  Therefore, we reverse the trial court's imposition of fines in this case and remand for further findings in consideration of the relevant factors.

### III.    CONCLUSION

Following our review of the record and based on the foregoing analysis, we reverse the judgments of the trial court and remand for a new sentencing hearing consistent with this opinion.

s/ *Steven W. Sword*
_____
STEVEN W. SWORD, JUDGE